Court. Greg Tsui on behalf of Appellant Tremonti Perry. With the Court's permission I'd like to reserve three minutes for rebuttal. Thank you. Under the PLRA, administrative remedies were not available because Mr. Perry was in a coma during the time he was required to seek administrative relief. Defendants have already conceded that remedies were not available while Mr. Perry was in a coma. Defendants, however, try to go beyond the pleadings and create a new exhaustion requirement for the first time on appeal. That new argument should be rejected. Let me ask you about that and I think it is a threshold question. Was their section 111k argument raised in the District Court and if not was it waived? It was waived, Your Honor. It was not raised below. In fact, I would point this court to JA 81. That's the defendant's reply to the District Court where they acknowledged the 15-day deadline. Make no mention of this new regulation which they claim creates a sort of discretionary waiver option. And so this is an entirely new theory that they've raised on appeal that this court should ignore just as the court in Ramirez treated it as waived. That's an independent basis to ignore their new theory. If you stick to the record that was before the District Court to the reason that the District Court gave, this appeal is simple. Because the pleadings make clear that administrative remedies were not available because Mr. Perry was in a coma. And what the District Court did was make the exact error that this court rejected in Smith v. Andrews. Remember in that case, an individual similarly was in a coma and then in the ICU during the period in which he was required to seek administrative relief. And rather than whether remedies were available during that time, during the window that the prison required the person to seek relief, the District Court in that case just decided, well, whenever it was that he physically recovered, I will evaluate timeliness from that point. That was an error this court said because again, it was inconsistent with the text of the PLRA and the prison's own system rules. And that's what the PLRA cares about. This court here did the exact same thing. It acknowledged, in fact, that administrative remedies were not available during the entire 15-day window prescribed by defendant's own grievance system. But then it just said, regardless, at some point, it didn't even define when, at some point afterwards, Mr. Perry became capable and therefore he was required to file a grievance. And that's nowhere found in the pleadings and nowhere found in their system rules. This court need only decide that on the face of the pleadings, at the motion to dismiss stage, non-exhaustion is not apparent. It can't be resolved against Mr. Perry at this stage. And so this case should go forward to fact development, to the evidentiary stage at which defendants can try to meet their factual burden, try to establish their affirmative defense using evidence. But at this stage, the question is just, on the face of the pleadings, were administrative remedies available? And the pleadings are clear that they weren't. This court can end there and let the case develop moving forward. If there are no further questions, I'll reserve the remainder of my time for rebuttal. Hearing none, thank you, Mr. Sway. May it please the court. I'm Assistant Attorney General Elliot Gustorf and I represent the state appellees. The parties and the record both agree that at no point prior to filing the underlying suit did Appellant Tremonti Perry attempt to grieve his underlying claims. The issue in this appeal, therefore, turns on a single point. Whether at any time between February 2014 and July 2017, administrative remedies were available to Perry. The answer is yes, for three reasons. First, because the relevant policies expressly allow for the waiver of filing deadlines in extenuating circumstances like those alleged by Perry. You referenced relevant policies and I think you're referring to Section K or subsection K. Does that appear in the offender rulebook? It doesn't appear. Where does it appear? It doesn't appear in the offender rulebook, but if you look at page 7 of Appellant's reply appendix, the policy itself is listed in the title. It says, Offender Grievance Policy D5-3.2, which is the policy in question and where these rules are found. And is that given to offenders? In the policy at Section 3A1, it says that it has to be available in its most current form to prisoners at all times through the prison library. More importantly, was this issue argued? Were those regulations argued to the district court? The regulations themselves, Judge Grunder, were not argued to the district court. However, the issue of... Is there any reason, any legitimate reason for excusing that? Yes, there is, Your Honor. First and foremost, the PLRA requires exhaustion and it requires exhaustion of the policy as provided by the prison. The courts, in resolving a 12b-6 motion to dismiss, may rely on their judicial experience and common sense in resolving those. The judge in the district court has resolved thousands of these cases and is intimately familiar with the policy. There's no way that he could have resolved this case without bringing his own knowledge of the policy. So you're saying the judge should have known about this argument? Not necessarily should, but did know about this argument and would have taken that into account when he resolved this case. Has he ever made an exception in a waiver situation where an argument's not made on the theory that the judge should have known about it or would have known about it? As far as I'm aware, Your Honor, no, there is not. However, for two reasons. Number one, this court may affirm the underlying decision based on any basis in the record. And here, there is no factual motion. And was this in the record? This policy was not in the record. Okay, so we can't affirm on any basis that's not in the record, right? Your Honor, in Ross v. Blake, which is a seminal case on this issue, policies were introduced by the respondent for the first time in their response brief in front of the Supreme Court. The Supreme Court, in that case, considered these newly introduced policies and discussed them and analyzed them in the Ross v. Blake decision for the first time at the Supreme Court level. The entire court unanimously agreed in the decision in Ross v. Blake, and it's notable. Did their holding suggest that we needed to consider something like that raised for the first time before our court? There was no issue, there was no discussion finding anything was inappropriate. That would be contrary to a long line of waiver cases, right? I think that Justice Thomas' concurrence in Ross v. Blake is notable in this because he agreed with the entire ruling, save for the introduction of these documents at the Supreme Court level. He thought it was more appropriately resolved for judicial notice to be taken or the record expanded by the appellate court on remand. So the entire Supreme Court, save Justice Thomas, thought it was appropriate for a response brief to include this for the very first time. And Justice Thomas, who thought it was inappropriate at the Supreme Court level, said that this should be recognized at the appellate court level, which is where we find ourselves today. Well, how about this? Even if we did consider it, if we supplement with the new regulations that your opponent has put forth, don't you lose anyway? Because he had been transferred to a different facility and there's no provision for filing them at the time he's been transferred. We do not lose, Judge Grunder, because the plain text of the policy still allowed for Perry to file an IRR post-transfer. The reply brief in this case misquotes the policy and ignores the plain language. On page 2 of their reply addendum, we find provision 3K10, which is under the IRR section, and says, if a prisoner has a complaint against their former institution, they may bypass the IRR provisions and file a grievance within 15 days of the transfer. If we look at the section that they found, 3L19, that is under the grievance sections, and that says, if a prisoner wants to file a complaint, so not just has a complaint, but wants to file a complaint, they shall bypass the provision and file a grievance within 15 days of the transfer. And this shall language doesn't appear anywhere in the 2015 policy. It's only in the 2009 policy. So there is no shall bypass from, I believe, January 2, 2015 on. From February 2014 on, if there is any ambiguity as a result of these provisions, the Supreme Court in Ross v. Blake again said that, when an administrative process is susceptible to multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. In this case, it is reasonable that an ordinary, rational inmate, knowing that an IRR is the first step in the grievance process, would go to the IRR section, would read the IRR section, and in the IRR section at 3K10, it says, may file an IRR if you have a complaint. They have the option to begin the IRR process, which has the waiver, or if they want to file a grievance and bypass the IRR process, they have to file it within 15 days of the transfer. At some point between February 2014 and July 2017, Perry was capable of communicating complex ideas. But you just said within 15 days of the transfer. Within 15 days of the transfer to file a grievance. An IRR is the first step in the process, and that may be waived at any point. Let me ask about the may be waived. Does a may be waived kind of phraseology actually give an instruction to an inmate or someone in custody that they have to? They have to try? In other words, all right, you've got the 15 day deadline, and then the staff has this internal policy where you may waive it if they're in the hospital. But I don't know that that answers the question of whether then under grievance policies, what actually has to be exhausted that the person like Mr. Perry is required to try. Judge Kelly, in the policy, and everywhere in this case, everyone identifies that it's a three-step process. It's the IRR, it's the grievance, and the grievance appeal. Everyone knows that the first thing that they have to do to begin this grievance process is to file an IRR. So that is the default filing. Right, but now it's 15 days past. And he's like, 15 days past, there's nothing that says that I have to, I don't know, does the prison want people doing this? He's like, well, because they might take it late. I just don't see how it's the onus on someone like Perry to know I have to keep trying. Because it's just not in the administrative regs for the inmate. It is in the administrative regs under 3K1. What, that you have to keep trying? Not that you have to keep trying, but that you have to file an IRR to begin the grievance process, except for if they wish to bypass the IRR process within 15 days by filing a grievance after transferring. Isn't the availability of that remedy a contingency? Contingent upon the exercise of discretion of someone? It is, Your Honor, but this Court and the Supreme Court have made clear that it is the possibility of somebody, of some relief existing. And in this case, where there is a waiver provision, there is the possibility of some relief existing by following the grievance process. What if he filed and they said, oh, nope, untimely? Ross versus Blake, Judge Kelly addressed this issue when it's talked about the dead-end provision. And it has to be where there is a provision and those who have the power consistently say that they don't or are unwilling to exercise that discretion. No, he's just one. You know, sometimes they'll exercise the discretion if somebody's in the hospital, but not Perry. Nope, untimely. We don't have any indication of that in the record, Your Honor. And, in fact, we actually have the opposite shown through the tangible examples offered of Jones versus Korizon and Gassell versus Jones, which are the two facilities that held Mr. Perry at this time. In the first facility where the incident happened, SECC, there was a January 2014 incident and the IRR was filed in March of 2014. And while the person resolving it said, well, this is out of time, they addressed the substance of that complaint on its face. In that same case, there was a July 2014 incident with a January 2015 IRR filed. They said, this is out of time, but addressed it on its face. At Moberly Correction Center, which is where the transfer happened, in Gassell versus Jones, there was a six-month gap. November 2014 was the incident, and the IRR was filed in May 2015. Six months later, they said, yes, this is untimely. However, we addressed it on its face. So the record, or rather, cases indicate that at these exact facilities at this time, they were willing to entertain untimely complaints even without this exception coming into play. That only weighs in favor of them choosing to waive when given the choice to be able to waive. And it doesn't have to be a guarantee that they're going to waive it. It just has to be the possibility for there to be some relief available by engaging in the process. After the transfer, when he became capable of filing an IRR, Mr. Perry may have filed an IRR and gone through the entire grievance process. And binding precedent says Congress has determined through the plain language of the PLRA that an inmate, if there are multiple reasonable interpretations as are presented here, the inmate has to err on the side of exhaustion. In this case, that would be filing an IRR. So a remedy was available in the express provisions of the policy. And the policy should be taken under consideration by this court in making its decision, because the courts routinely take judicial notice of these policies, including this court. The policies themselves are public records. They are used routinely by district courts and this court to resolve these issues. We can't engage in exhaustion without knowing the policy. Perry was not surprised by this. At every point, by incorporating the exhaustion claim, or saying that he had exhausted in paragraph 15 of his second amended complaint, he necessarily incorporated the policy into the complaint itself. And it would preserve judicial economy by recognizing it here, as this court has the power to do, because the first thing that would happen on remand is that we would bring this policy up to the court, and the court would take judicial notice. Turning to, I've already briefly discussed this, but as to the real world facts, Ross says it's not just what is written, but we have to go and look at the real world application of these policies, in terms of determining if there was exhaustion. Here, as the court knows, the Missouri Department of Corrections routinely answers untimely complaints on their face. And I've given two examples of cases where... Isn't there a difference, though, between having the authority to address something out of time, and a requirement that it be exercised for purposes of exhaustion? There is a difference, Judge Grass, and to the extent that... If they follow in accordance with the policy, exhaustion has to be done. But the Supreme Court also said, there are going to be times where it is written, and it's not followed. And in this case, there are numerous examples of, yes, this is how it's written, but this is how it is actually done. And there are specific examples that if Perry had filed it out of time, even without this exception, that these facilities would have considered an untimely complaint. And that is the real world experience of prisoners in the Missouri Department of Corrections. To briefly talk about... Did you have a question, Judge Kelly? I just was thinking, we're still at 12 v. 6, though, right? We're still at a motion to dismiss. You've argued a lot of prior experience within the prison, and I just wonder where that's fitting into our analysis here. That would be for examination of the real world application, as raised by Ross v. Blake. On a motion to dismiss? Not on a motion to dismiss, but again, the court may take judicial notice and use its judicial experience, and this is the judicial experience of the district courts and this court with the Missouri Department of Corrections. To briefly talk about the transplant arguments, Mr. Perry's transplant claims are conflated with the medical indifference claims. The transplant claims did not ripen until he asked for a transplant as an alternative treatment to dialysis and was denied. That didn't happen during the 15 days that he was comatose. He couldn't ask for a transplant when he wasn't able to speak. When he asked and was denied, that is when the claim ripened, and he should have exhausted it at that time. I see that I'm out of time. Thank you very much, Your Honor, for your time. Thank you, Mr. Guster. Thank you, Your Honors. Defendants' answers today make clear that their new arguments are waived, immaterial, and wrong. I'd like to start with waiver because that is really the beginning and end of these sets of arguments. Judge Grinder, you asked defendants for a legitimate reason to excuse their waiver below or for an example from this court of excusing an unjustified waiver before the district court, and they gave you none, and that's sufficient to reject their new arguments. I heard them try to blame the district court for not realizing this on its own, and I would reject that suggestion because, again, they invited this error by the way they argued the case below. They acknowledged the 15-day deadline and suggested to the district court that it should just instead consider separate and apart from what the rules required when Mr. Perry became physically capable, exactly the kind of error that this court rejected in Smith. Let me ask you, Mr. Gustorf suggested that it would be kind of a hollow point for us to do that because he would then go back to the district court and make this argument. Is that something he could do? I think at summary judgment, and again, we're not at the evidentiary stage where they need to meet their burden to prove their affirmative defense, but that is the stage when he should be trying to establish what the rules were, when the rules were communicated, and how Mr. Perry's specific factual situation allowed him to use those rules. All of that is for a later stage, not for the pleading stage because, again, exhaustion isn't a pleading issue. It's an affirmative defense that Mr. Perry bore no responsibility for pleading at all. So it's not a hollow point. It's actually the right place for these arguments to be made, not for the first time before this court on a pleading stage appeal. Separate and apart from that, because you don't need to move further than that, but separate and apart from that, as you noted, Judge Graz, their new arguments are immaterial because there's no evidence, again, because we're at the pleading stage, there's no evidence that regardless of what they think the policies on the books said, that they actually communicated this to prisoners like Mr. Perry. In fact, the document that they provided to prisoners to explain how the grievance system worked said, you must file this form within 15 calendar days of the incident you are complaining about, period. No mention of this so-called discretionary waiver that the prison officials might make based on factors unexplained and within their discretion. So regardless of what they think the rules on the books were, it is not enough because as this court said in Martinez, remember, that was a case about rules that were clearly on the books but which were never communicated to the prisoner because he didn't speak English and none of the forms that were provided to him communicated to him in the language he understood what the rules were. It doesn't matter what the rules on the books are if they aren't actually provided to the prisoners. That's a second independent reason to ignore their new arguments. And the third is, even if you get past their waiver, the problems with their request for judicial notice, and I will flag that this court has rejected this same attempt to rely on unrelated district court cases to take judicial notice of what the rules were in this particular case, that's in decisions like Stanko v. Patton. So even if you get past the waiver, judicial notice, the communication problem, and you get to what the rules actually said, they don't establish a requirement for prisoners. Judge Grass, you noted that there is a difference between the prison having discretionary authority to do something and prisoners having an obligation to take that action. Let me ask you about that. In Ross v. Blake, the Supreme Court said that in order for a remedy to be available, it had to be capable of use. Do you know if there's any authority for the proposition that something is capable of use if it's contingent? Contingent on? Subject to exercise of discretion or some contingency. I see. I think I would point this court to Jones v. Bach, first of all, which said at page 218 that it is the prison's requirements that define the boundaries of exhaustion. So again, not this amorphous theoretical possibility, but what the prison communicated was required of prisoners to take advantage of the administrative grievance system. And I think that rule from Jones v. Bach has been applied in a number of cases where there was a kind of discretionary or non-mandatory option, but it wasn't required of prisoners. So that was discussed in Stanko, a case from this court, where the court acknowledged that there appeared to be some kind of emergency grievance procedure, but there was no evidence that it was a requirement that the prisoner take. I would also point to the Eleventh Circuit's decision in Turner v. Burnside, again, a situation where there may have been an emergency grievance procedure, but it wasn't a requirement imposed on prisoners by the prison's grievance system. These are all cases that recognize that what the PLRI cares about is what the prison requires, and the prison has total control over what it requires. The Third Circuit in Spruill v. Gillis said, quote, the warden is responsible for the grievance system. If the warden is dissatisfied, he or she may alter the grievance system. So this is not a situation where they are stuck with the consequences of how the system works. This is by their choice, and they can alter it if they think fit. Judge Kelly, you pointed out that the language they point to is May language. These grievance system rules show that the defendants know how to speak in the language of requirement. This is what they said to prisoners in those exact rules. The prisoner must file an informal resolution request within 15 days of the incident. That is a requirement. In the next sentence, it says the unit manager may waive the timeline in extenuating circumstances. That is a stark contrast from the language of requirement that the system used to describe what prisoners have to do. And that, again, is an independent basis for rejecting their argument. I want to briefly address the transfer issue. I heard defendants say something like the difference between the regulation we point to, this is at our addendum at page three, is that there's a grievance step, step two, and then there's an informal resolution request step, that's step one. But the regulation we point to specifically says that if you are an offender who wishes to file a complaint against the institution from which you were transferred, you shall bypass the informal resolution request, and you shall file a grievance within 15 calendar days of the transfer date. So, again, this is the language of requirement, and it is mandatory language focusing on a 15-day window. That all parties agree, Mr. Perry was unable to take advantage of administrative remedies during. And that is including this transfer window. Because, remember, both the district court and defendants agree that Mr. Perry was unable to take advantage of administrative remedies, not just when he was in a coma, but during the period afterwards. Because in that period, he was still paralyzed, he required tracheotomy to breathe, and he was in end-stage renal failure. And so it is a period after the coma that continued his physical inability to take advantage of grievances. Was he transferred while in that condition? He was, Your Honor, and that's in the complaint. It alleges that while he was still paralyzed, he was transferred to his current facility. And remained paralyzed more than 15 days after? So I don't know that it's specified how long that period lasted. And so since we're at the pleading stage, it's a reasonable inference that that continued for at least 15 days. I also wanted to address there some possibility of relief language. Now, that's language that comes from Booth v. Cherner and from this Court's cases like Muhammad. And what that language is saying is that if the prison grievance system makes available a type of remedy, injunctive relief, damages, a type of remedy, even if it's not the type of remedy you are seeking, you need to take advantage of the grievance system rules. It is not a statement that if there is any theoretical possibility that the prison officials might waive a deadline or might do something to your benefit, you have to take that step. And that's what they try to make that language out to be, and it just doesn't apply to this situation. This situation turns on what the prison grievance system requires. If it did apply, wouldn't it require every prisoner to grieve after the deadline upon hope that they might take it up late? I think that's exactly right, and it's not clear when that obligation would stop. They might have to continuously flood the prison grievance system with untimely requests out of the theoretical possibility that something positive might happen. That's not the system they've adopted. And as a result, they're held to the requirements that they communicated to prisoners, if any. Again, they have not provided any factual evidence of what exactly they communicated to prisoners. If there are no further questions, I'll just close by saying, Judge Kelly, as you said, all of their new arguments just don't fit in the analysis that this court is being asked to do on this record and on review of the decision below. We are at the pleading stage, and Mr. Perry's allegations are clear. Administrative remedies were not available because he was in a coma. That's all this court needs to decide. Any new arguments they want to raise for the first time, they can raise at summary judgment when they attempt to meet their factual burden. We ask this court to reverse. Very well. Thank you to both counsel. Appreciate your argument and appearance today. Case is submitted, and we'll issue an opinion in due course.